# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHIE BERMUDEZ**, | : | CIVIL ACTION NO. 1:09-CV-0741 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **RONNIE HOLT**, Warden, | : | |
| Respondent | : | |

## **MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Richie Bermudez ("Bermudez"), who, at the time, was incarcerated at the Federal Prison Camp at Canaan, Waymart, Pennsylvania.[1] Bermudez contends that respondent violated his due process rights and the Administrative Procedure Act in the context of a disciplinary hearing. (Doc. 1, at 1.) The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

On September 4, 2008, Bermudez received an incident report charging him with "Use of telephone for abuses other than criminal activity" in violation of Code 297 based on the following:

> While [E. Barrett, Senior Officer Specialist] was monitoring recorded phone calls from 8-30-08, [he] listened to a call made by I/M Bermudez, Richie #56531-054 from unit GA, staion [sic] #7424 @ 6:38 p.m. During

---

[1] Bermudez is presently incarcerated at the Federal Medical Center at Devens, Ayer, Massachusetts. (Doc. 8.)

> this call I/M Bermudez called a male at [redacted text] and the male said, "I'm talking to Remmy on the computer", "I/M asked male to ask Remmy what the house number is, or call his cell phone and hurry up I only got five minutes left." "I/M asked male to ask Remmy when he is coming to the city." "Male tells I/M he is not picking up but he is still on the computer." "Male said Tatiana is also on-line." I/M said ask her what her house number is". "Male said Remmy told me she ain't home and I/M said ask him what her house number is". "Male said I'm waiting for a response, I got it [redacted text]". "I/M told male to ask Remmy why she ain't answering and then the I/M said call him on his cell phone and I'll call you in a half-hour.["]

(Id.) During his interview with the investigating officer, Bermudez stated that "[t]his was just my nephew calling my other nephew to get the number." (Doc. 7-2, at 19.) Upon completion of the investigation, it was concluded that "[d]ue to the cooborating [sic] and detailed information provided by Officer Barrett and inmate Bermudez [sic] admission he circumvented telephone procedres [sic], it is recommended this report be forwarded to UDC for further hearing. This type of behavior is not consistent with the safe and orderly running of an institution and will not be tolerated at FPC Canaan." (Id.) The UDC reviewed the matter and referred it to the Disciplinary Hearing Officer ("DHO") based on the severity level of the incident and the applicable sanctions.

On September 5, 2008, after being advised of the rights associated with the process, Bermudez signed the Inmate Rights at Discipline Hearing form. (Doc. 7-2, at 21, 23.) He chose not to call witnesses, but did exercise his right to have either staff representative Mr. Roberts or Mr. Mercado assist him at the hearing. (Id. at 23.) Mr. Roberts agreed to serve as the staff representative. (Id. at 25.)

The hearing commenced on September 16, 2008. (Doc. 7-2, at 27.) During his inmate statement, Bermudez stated that the "phone call was taken out of context" and alleged that he made the following comment during the conversation: "What are you trying to get me in trouble." (Id. at 28.) Consequently, the DHO suspended the hearing "to monitor the recorded conversation with Bermudez' elective staff representative." (Id.) According to the DHO, "[b]oth Bermudez's staff representative and I listened to the recording in SPC Canaan's Message Center after attempts to listen to the call in the Case Manager's office failed. Since keys, bed books, staff radios, and other equipment are stored in the Message Center, inmates are not permitted entry. Given the need to preserve institutional security, Bermudez could not be granted entry to the Message Center." (Doc. 7-2, Declaration of Disciplinary Hearing Officer Marc Renda ("DHO Renda Decl."), at 6, ¶ 18.) "Bermudez never stated he wanted to personally listen to the recording." (Id.)

When the hearing resumed, the staff representative represented that he met with Bermudez prior to the hearing to discuss the case and review all relevant documents. (Doc. 7-2, at 27.) He noted no discrepancies in the disciplinary process. (Id.) Bermudez disputed the charge against him stating that both parties involved in the conversation were on his approved telephone list. (Doc. 7-2, at 27.) He also made the following statements:

> "I called to obtain a number from a family member. As a coincidence he was also talking to my other niece (Tatiana)."

3

> "I told him to ask him when he's coming to the city"
>
> "I said call him on his cell-phone and I'll call back in a half hour."
>
> "Ask Remmy what the house number is, or call his cell phone and hurry up I only got five minutes left."

(Doc. 7-2 at 28.)

After considering all of the evidence, the DHO found based on the greater weight of the evidence that "the prohibited act of the Use of Telephone for Abuses Other Than Criminal Activity (Code 297) was committed." (Id. at 29.) In arriving at this conclusion, he considered the account of the reporting officer, Bermudez's argument that the individuals with whom he was communicating were on his approved telephone list, the recording of the telephone call, and Bermudez's statements during the investigation and hearings. The DHO specifically found that:

> Even if Bermudez's claim [that] the unapproved parties were on his approved visiting list was substantiated it would not exculpate him of the act of communicating, attempting to communicate, or share information, fact or data via an approved party on the I[nmate] T[elephone] S[ystem]. Secondly, both the DHO and staff representative monitored the recorded conversation which corroborates the reporting staff members account of the incident, nor was it conveyed the approved parties actions were prohibited. Bermudez is informed and conscious of the fact the approved party is communicating or attempting to communicate with other(s) on a computer and on a cell-phone. Regardless of the message conveyed, the approved party is acting as a medium to share information from other unapproved parties through unauthorized avenues.

(Doc. 7-2, at 29.) In sanctioning him with disallowance of 27 days of good conduct time, a suspended 15 day sentence for disciplinary segregation, and loss of telephone privileges, the DHO reasoned as follows:

4

> The use of a telephone while incarcerated is a privilege, not a right. It is an important part of the institution's security that inmates only be allowed to contact those persons authorized. Not only is this an internal security matter but the Bureau of Prisons has an obligation, to the public at large, to ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conducting businesses or to threaten or harass members of the public. For these reasons, the Bureau of Prisons has developed telephone monitoring procedures.
>
> Three-way calls, call forwarding, using another inmates telephone account, sharing PAC numbers, speaking in code, speaking on speaker phones or call forwarding can not and will not be tolerated. Conduct of this nature whereby an inmate solicits an approved party to contact another party on a cell phone or other media sharing device, to direct the approved party to simultaneously communicate with other(s) while on the ITS, or to have the approved party act as a medium to share information from third unapproved parties, is egregious and can not be tolerated.
>
> The disallowance of good conduct time, disciplinary segregation (the term of which was suspended) was imposed to demonstrate the seriousness of his actions and as punishment for his conduct. The loss of telephone privileges (and the term of which was suspended) was imposed to deter further behavior and promote compliance with institutional rules and regulations. It is hoped that these sanctions prompt Bermudez to modify his behavior and deter others from engaging in such activities in the future.

(Doc. 7-2, at 29-30.)

Bermudez alleges that his due process rights were violated in the context of the disciplinary hearing in that there was insufficient evidence to support the findings of the DHO. He also contends that the conclusions drawn were arbitrary and capricious and, therefore, in violation of the Administrative Procedure Act (Doc. 1, at 6.)

**II.    Discussion**

   **A.    Due Process Clause**

To the extent that Bermudez claims violations of his due process rights in the context of the disciplinary hearing, resulting in a loss of twenty-seven days of good conduct time, such a claim is proper because the hearing impacted the duration of Bermudez's confinement.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides:  "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time.  See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  These regulations dictate the manner in which disciplinary action may be taken against a prisoner who violates, or attempts to violate, institutional rules.  The first step requires the preparation of an incident report and an investigation pursuant to 28 C.F.R. § 541.14.  Staff is required to conduct the investigation promptly absent unusual circumstances.  28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the high category offenses, the UDC refers the matter to a

DHO for a hearing. 28 C.F.R. § 541.15. Because Bermudez was charged with an offense in the high severity category, the matter was referred for a disciplinary hearing.

High Category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate, 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564 (1974).

The incident report was served upon Bermudez on September 3, 2008, and his hearing was held on September 16, 2008. Clearly, he was afforded written notice of the charges against him twenty-four hours in advance of the DHO hearing as required by Wolff. To the extent that he argues that he was not provided with notice within twenty-four hours of when staff became aware of the incident as set forth in 28 C.F.R. 541.15(a), this argument is without merit. Due process only requires that notice of the misconduct be provided at least twenty-four hours before the DHO hearing.

7

Bermudez's claim that he was denied the opportunity to call witnesses is also meritless. (Doc. 1, at 9.) At no stage in the process did he request that witnesses be called on his behalf. (Doc. 7-2, at 21, 23, 27-28.) Moreover, at the onset of the hearing, he was advised before the DHO of his rights with regard to staff representation and witness testimony and indicated that he understood. (Id. at 27.)

He fares no better in arguing that the staff representative should have called other staff members who monitor calls and a few inmates to testify that the manner in which he utilized the telephone is acceptable. (Doc. 1, at 10.) The duty of the staff representative is clearly defined as speaking to witnesses who may help the inmate's case "if the inmate indicates there are such witnesses whom the inmate wishes to have called." (Doc. 7-2, "Duties of Staff Representative Form", at 25, ¶ 2.) He does not assert that certain witnesses were requested and the staff member failed to call them.

He also alleges that his due process rights were violated because he was denied access to the recorded telephone conversation. Yet, he fails to demonstrate that he made such a request. According to the DHO, Bermudez never stated that he wanted to personally listen to the recording at any time during the hearing process, which, significantly, was suspended for the very purpose of listening to the recording. (Doc. 7-2, DHO Renda Decl., at 6, ¶ 18). Nor did he raise this issue at any point while appealing the DHO's decision. (Doc. 1, at 30-35.) As concerns his Freedom of Information Act requests to hear the recording, they were not made

8

until after the hearing was concluded. (Doc. 1, at 44-45.) No relief is warranted on this claim.

He also contends that his due process rights were violated because his staff representative provided ineffective assistance. However, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. See Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996). Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." See Wolff, 418 U.S. at 570; Duarte v. Turner, 46 F.3d 1199 (7th Cir. 1995) (unpublished opinion) (rejecting prisoner's habeas claim that his staff representative was ineffective for failing to discover evidence because due process under Wolff only requires the aid of a staff member where the inmate is illiterate or the issues are complex.) Bermudez makes no allegation that he is illiterate, and the issues involved in the case were not complex.

The petition also contains a claim that the hearing examiner was not impartial. Bermudez states that, "[o]ne cannot alledge [sic] that a DHO is an impartial decision maker. The very nature of being a correctional officer creates an adversarial role. The inmate is in the custody of the BOP and the DHO is a correctional officer who is required to maintain custody." (Doc. 1, at 10.) In the context of prison disciplinary proceedings, due process requires that the

9

disciplinary tribunal be sufficiently impartial. Meyers v. Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974); see Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (disciplinary committee was sufficiently impartial so as not to violate due process). In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16(b). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. The Meyers case involved disciplinary action against members of a prisoners' committee involved in the work stoppage. During the work stoppage, an associate warden had considerable contact with the prisoners' committee. Thereafter, the same associate warden served on the disciplinary committee. The Meyers court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal. 492 F.2d at 305-07.

In the matter *sub judice*, the DHO did not have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge. Hence, this claim is without merit.

Bermudez also contests the sufficiency of the evidence. Where the due process requirements of Wolff are met, as is the case here, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.17(f) (requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

In considering the evidence, as recited in the "I. Background" section, *supra*, the court finds that there was "some evidence" to support the DHO's decision, specifically, the statement of the reporting officer, Bermudez's statements during the investigation and at the hearing, and the telephone recording. In doing so, the court notes that, "[a]scertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of

11

witnesses, or weighing the evidence." Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. Hill, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Bermudez's claim that there was insufficient evidence to support the DHO's decision.

Bermudez also challenges the severity of the sanctions imposed by the DHO. BOP regulations authorize the BOP to impose sanctions when an inmate "is found to have committed a prohibited act." 28 C.F.R. § 541.13(a). Prohibited acts under BOP regulations include High Category Code 297, entitled "Use of a telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures; possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; and talking in code)." 28 C.F.R. § 541.13, Table 3. The sanctions that may be imposed upon a finding of guilt of a "High Category" offense include, *inter alia*, disallowance of fourteen to twenty-seven days of earned good conduct time, up to thirty days disciplinary segregation, and loss of privileges. 28 C.F.R. §541.13, Table 3. He is not entitled to relief on this ground because the sanctions imposed, disallowance of twenty-seven days of good conduct time, a suspended disciplinary segregation sentence, and loss of telephone privileges, are within the range of appropriate sanctions for "High Category" offenses. See id.

Nor is he entitled to relief on the ground that the DHO did not make any statement that demonstrates how he threatened institutional security. In discussing the reason for the action taken and sanctions imposed, as noted in section "I. Background," *supra*, the DHO meticulously set forth the threat posed by Bermudez's conduct. (Doc. 7-2, at 29.)

### B. Administrative Procedure Act

Petitioner argues that the DHO's decision was arbitrary and capricious and an abuse of discretion in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(a). The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Lopez v. Davis, 531 U.S. 230, 240 (2001); Edwards v. United States, 41 F.3d 154, 156 (3d Cir.1994). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins., 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted). A reviewing court must find that the actual choice made by the agency was neither arbitrary nor capricious. See C.K. v. N.J. Dep't of Health & Human Services, 92 F.3d 171, 182 (3d Cir. 1996).

To make this finding that agency action was not arbitrary or capricious, a court must review the administrative record that was before the agency at the time of the decision, and "must consider whether the decision was based on a

consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, at 416 (1971). Reversal of agency action is required "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if [the court] simply cannot evaluate the challenged agency action on the basis of the record before [it]." C.K., 92 F.3d at 184 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

Review of the administrative record reveals that the DHO's decision was not arbitrary or capricious. It is clear that the DHO considered all relevant factors and that there is full support in the record for the agency action.

## III. **Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order follows.

    S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated: January 4, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHIE BERMUDEZ,** | : | **CIVIL ACTION NO. 1:09-CV-0741** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **RONNIE HOLT, Warden,** | : | |
| Respondent | : | |

## **ORDER**

AND NOW, this 4th day of January, 2010, upon consideration of the petition for writ of habeas corpus (Doc. 1), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED.

2. The Clerk of Court is directed to CLOSE this case.


                                                    S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge